**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

GARNET F. WEAVER,

                                    Plaintiff,

          v.                                              No. 02-CV-1397
                                                          (FJS/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

CONBOY, McKAY, BACHMAN &          LAWRENCE D. HASSELER, ESQ.
   KENDALL, LLP
Attorney for Plaintiff
407 Sherman Street
Watertown, New York 13601-9990

HON. GLENN T. SUDDABY             WILLIAM H. PEASE, ESQ.
United States Attorney for the    Assistant United States Attorney
  Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

     Plaintiff Garnet F. Weaver ("Weaver") brought this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying his application for benefits under the Social Security Act.

Weaver moves for a finding of disability and the Commissioner cross-moves for a

_____

     [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

judgment on the pleadings. Docket Nos. 18, 20.  For the reasons which follow, it is

recommended that the Commissioner's decision be reversed.

## I. Procedural History

On March 13, 1996, Weaver filed an application for supplemental and disability

insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 44-47,

55.[2] That application was denied after the initial determination and following

reconsideration. T. 27-37. Weaver requested a hearing before an administrative law judge

(ALJ), T. 38,  which was held before ALJ Gordon Healy on July 9, 1997. T. 300-30.  In a

decision dated October 23, 1997, the ALJ denied Weaver's claims. T. 10-20.  On August

27, 1999,  the Appeals Council denied Weaver's request for review, thus making the ALJ's

findings the final decision of the Commissioner. T. 6-7.  This action followed.[3]

## II. Contentions

Weaver contends that the ALJ erred when he: (1) failed to find that Weaver suffered

from a listing-level impairment; (2) failed properly to assess the severity of Weaver's

conditions; (3) failed properly to consider the medical evidence and opinions of record; (4)

failed properly to calculate Weaver's residual functional capacity ("RFC"); (5) failed to find

Weaver disabled pursuant to the Medica Vocational Guidelines ("Grids"); and (6) failed

─────────────────────

[2] "T." followed by a number refers to the pages of the administrative transcript
filed by the Commissioner.  Docket No. 17.

[3] The Commissioner's motion to dismiss on the ground that Weaver's complaint
was untimely was denied on December 29, 2004. Docket Nos. 14, 15.

properly to assess Weaver's credibility. The Commissioner contends that there is substantial evidence in the record to support a finding that Weaver was not disabled.

## III. Facts

Weaver is currently fifty-two years old, has a tenth grade education, and previously worked as a truck driver and farm laborer. T. 27, 44, 53, 313. Weaver alleges that he became disabled on November 20, 1994 due to a knee problem and high blood pressure. T. 44, 55.

## IV.  Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to

evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he [or she] is not, the
> [Commissioner] next considers whether the claimant has a 'severe
> impairment' which significantly limits his [or her] physical or mental
> ability to do basic work activities.  If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical evidence, the claimant
> has an impairment which is listed in Appendix 1 of the regulations.
> If the claimant has such an impairment, the [Commissioner] will consider
> him [or her] disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a 'listed' impairment is unable to perform
> substantial gainful activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity to perform
> his [or her] past work.  Finally, if the claimant is unable to perform his
> [or her] past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2005).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v.

Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an

impairment prevents him or her from performing past work, the burden then shifts to the

Commissioner to determine if there is other work which the claimant could perform.  Id.


**B. Scope of Review**

The reviewing court must determine if the commissioner has applied the proper legal

standards and if the decision is supported by substantial evidence.  Machadio v. Apfel,

276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at

131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered

throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).


## V.  Discussion

### A. Medical Evidence

Weaver received chiropractic treatments from January 11, 1994 until May 8, 1996 for back pain. T. 117-21. Weaver was treated at the Family Medical Center by Ted Carteaux, a physician's assistant, from August 1995 until the present. T. 105-08, 122-28, 160-64, 236-40. Carteaux found that Weaver had osteoarthritis of the left knee, stable hypertension, and obesity.[4] T. 105, 112, 122.  An examination of the knee showed some swelling, there were no sensory, motor, or reflex deficits, no muscle spasms, no atrophy, and mild effusion of the medial aspect of the left knee. T. 106.  On September 12, 1995, an x-ray showed moderately advanced osteoarthritis involving the medial joint compartment. T. 107, 115.  Carteaux found that Weaver could occasionally lift and carry twenty pounds, could stand and walk less than two hours per day, had no limitation to

---

[4] "[A]n increase in body weight beyond the limitation of skeletal and physical requirement, as the result of an excessive accumulation of fat in the body." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1166 (28th ed. 1994).

sitting, and was unable to use foot controls. T. 108.  In July 1996, Carteaux noted that Weaver had degenerative oint disease, the prognosis was poor due to the fact that Weaver was not a candidate for surgery, and Weaver was not employable. T. 123. Weaver was prescribed Relafen and tylenol for pain and lotension for hypertension. T. 105.

On March 13, 1996, Dr. George Mina evaluated Weaver for knee pain. T. 102. There was no effusion, range of motion was 0º to 130º, and there was no instability. T. 102. X-rays showed medial joint space narrowing, spurs in the patellofemoral joint, slight degenerative changes in the lateral joint line, and half the joint space remained in the medial joint line. T. 102-03. The diagnosis was osteoarthritis and torn medial meniscus. T. 102.

On March 19, 1996, Dr. Perry T. Shuman evaluated Weaver for knee pain. T. 103-04. Weaver had full range of motion in the knee, no instability to stress, and a positive patellofermoral grinding with flexion extension of the knee. T. 103. The impression was degenerative disease of the left knee. T. 103. Dr. Shuman recommended anti-inflammatories, weight loss, and a brace for support. T. 103.

On September 26, 1996, Dr. Frank Harvey examined Weaver and the assessment was hypertension and morbid obesity. T. 133. On November 1, 1996, Dr. Harvey found that Weaver was currently unable to sit for more than thirty minutes, unable to stand for more than thirty minutes, and unable to walk for more than thirty minutes. T. 133. Knees showed full range of motion, there was no effusion or  retropatellar tenderness, and there was positive medial joint line tenderness. T. 135. Dr. Harvey opined that there was a moderate partial disability that was possibly permanent. T. 136.

6

X-rays of the left knee showed moderate degree of osteoarthritis involving the medial compartment, mild osteo arthritic changes, and no joint effusion. T. 140. X-rays of the lumbrosacral spine showed a slight straightening of the lumbar curvature, moderate degenerative disc disease at L2-L3, mild degenerative disc disease at L3-L4, severe degenerative disc disease at L4-L5, and posterior facet arthritis of a moderate degree at L4-L5. T. 139.

A reviewing physician found that Weaver had hypertension, obesity, osteoarthritis, and degenerative joint disease, and was limited to less than sedentary exertional level because Weaver could stand and walk for less than two hours a day. T. 141. A physical RFC assessment found that Weaver could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, could stand, walk, and sit six hours, and was unlimited in pushing and pulling. T. 68-75.  A second RFC assessment found that Weaver could occasionally lift and carry ten pounds, could frequently lift and carry less than ten pounds, could stand and walk two hours, sit six hours, and was unlimited in pushing and pulling. T. 84-91. A consultant reviewed this assessment and agreed with the findings. T. 92-93.

### B.  Listing of Impairments

Weaver contends that he met the requirements for an impairment under 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 9.09.  The Commissioner contends that § 9.09 was deleted from the regulations and thus cannot be applied to Weaver.  In the alternative, the Commissioner contends that the medical evidence fails to satisfy the conditions required by § 9.09.

Section 9.09 was deleted from the regulations on October 25, 1999.  64 F.R. 46122 (1999).  The deletion has only a prospective effect.  Id. at 46127.  Under a policy interpretation ruling by the Social Security Administration ("SSA"), the revised regulation applied to "claims that were filed before October 25, 1999, and that were awaiting an initial determination or that were pending appeal at any level of the administrative review process . . . ."  S.S.R. 00-3P, 2000 WL 628049, at *7 (May 15, 2000).  However, the SSA does not have the power to apply its regulations retroactively.  Portlock v. Barnhart, No. 99-CV-931, 2002 WL 1393565, at *9 (D. Del. June 24, 2002); Kokal v. Massanari, 163 F. Supp. 2d 1122, 1134 (N.D. Cal. 2001).

The new regulation itself states that it has only a prospective impact.  64 F.R. 46127. Accordingly, § 9.09 still applies to cases pending at the time of its deletion.  See Portlock, 2002 WL 1393565, at *10 (applying the old § 9.09 to plaintiff's claim); Kokal, 163 F. Supp. 2d at 1134 (same); Harris v. Apfel, 152 F. Supp. 2d 1261, 1266, n.1 (D. Kan. 2001) (same). Here, the ALJ denied Weaver disability benefits on April 22, 1997 and  Weaver's appeal to the Appeals Council was denied on August 27, 1999. Therefore, Weaver's case was decided prior to the deletion of this regulation and applies to Weaver's claim here.

Under § 9.09, a claimant meets the requirements for a listed impairment if (1) claimant's weight is equal to or greater than the value set forth in table II, and (2) claimant has a "[h]istory of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.09(A) (1998).

### 1. Weight requirement

Weaver contends that he has met the obesity requirement of Appendix 1 of the

Regulations, 20 C.F.R. Part 404, Subpart P, App. 1, Section 9.09A, Table II, or the

medical equivalent thereof.  20 C.F.R. § 404.1526.  A man who is seventy inches tall must

weigh 318 pounds without shoes and a man who is seventy-one inches tall must weigh

328 pounds without shoes to meet the weight requirement.  Id. at Table II.  On April 4,

1996, Weaver reported that he was seventy inches tall and weighed 335 pounds. T. 62.

On September 26, 1996, Weaver was seventy-one inches tall and weighed 350 pounds.

T. 129.  Therefore, Weaver's weight met the criteria for obesity.


### 2. Physical Limitation

Weaver contends that his knee condition and edema in his ankles qualified as a

physical limitation necessary to meet the obesity requirement. The Commissioner

contends that there was not substantial evidence to support a finding that these

impairments meet the physical limitation requirement of obesity

The ALJ found that the presence of degenerative joint disease of the left knee and

osteoarthritis at L4-L5 did not meet or equal the medical criteria of any listed impairment.

Medical equivalence will be found "if the medical findings are at least equal in severity and

duration to the listed findings of the listed impairment."  20 C.F.R. § 404.1526 (2005).

"Medical equivalence must be based on medical findings, [and] must be supported by

medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 404.1526(b).

"'For a claimant to qualify for benefits by showing that his unlisted impairment, or

combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" Prentice v. Apfel, No. 96-CV-851, 1998 WL 166849, at *4 (N.D.N.Y. Apr. 8, 1998) (Pooler, J.) (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990)).

The ALJ found that while a reviewer found that Weaver met the criteria for this listing, the preparer was not a physician and the finding was not consistent with the opinion of Dr. Harvey, who found that Weaver had a full range of motion in his knees with no effusion and no retropatellar tenderness. T. 136. However, Dr. Harvey also found that Weaver had morbid obesity and had a moderate partial disability that was possibly permanent. T. 136.

There is also objective evidence to support a finding that Weaver's obesity impacted his physical limitation in his knee and his spine which caused restrictions in the ability to engage in work-related activities. X-rays showed moderately advanced osteoarthritis, medial joint space narrowing, spurs in the patellofemoral joint, degenerative changes in the lateral joint line, and half the joint space remained in the medial joint line. T. 102-03,107, 115, 140. X-rays of the lumbosacral spine showed a slight straightening of the lumbar curvature, moderate degenerative disc disease at L2-L3,  mild degenerative disc disease at L3-L4, severe degenerative disc disease at L4-L5, and posterior facet arthritis of moderate degree at L4-L5 and L5-S1. T. 139.

The opinions of other medical sources support a finding that Weaver's obesity was a severe impairment.  Carteaux, a physician's assistant and treating source, found that Weaver had degenerative joint disease and was not employable. T. 123. Dr. Mina diagnosed Weaver with osteoarthritis and a torn medial meniscus. T. 102. Dr. Shuman found that Weaver had degenerative disease of the left knee. T. 103.  Weaver was not a

candidate for surgery due to his obesity. T. 123. Examining sources recommended weight

loss for treatment. T. 103.  Therefore, there is substantial evidence in the record to

support a finding that Weaver's weight met the criteria and that Weaver had a physical

limitation that included a "history of pain and limitation of motion in any weight bearing joint

or spine (on physical examination) associated with findings on medically acceptable

imaging techniques of arthritis in the affected joint or lumbosacral spine." 20 C.F.R. Pt.

404, Subpt. P, App. 1, § 9.09(A) (1998).


## C. Severity

Weaver contends that the ALJ failed to evaluate the severity of his obesity and

consider it in combination with his other impairments. The Commissioner contends that

the ALJ properly evaluated the severity of Weaver's impairments.

As stated above, step two of the sequential evaluation process requires a

determination as to whether the claimant has a severe impairment which significantly limits

the physical or mental ability to do basic work activities. The ability to do basic work

activities is defined as "the abilities and activities necessary to do most jobs." 20 C.F.R. §

404.1521(b) (2003). Basic work activities which are relevant for evaluating the severity of a

physical  impairment include the physical functions such as walking, standing, sitting.

lifting, pushing, pulling, reaching, carrying, or handling.  20 C.F.R. §§ 404.1521(b); see

also Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996).

An impairment is severe if it causes more than minimal functional limitations. 20

C.F.R. § 416.924(c) (2003). Age, education, and work experience are not evaluated in

determining if the impairment or combination of impairments are severe. 20 C.F.R. §

11

416.920(c) (2003). The severity analysis does no more than "screen out de minimis claims." If the disability claim rises above the de minimis level, then further analysis is warranted.  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. The next inquiry is whether a claimant retained the RFC to perform his or her past work. This inquiry must consider the combined effect of any impairments, whether or not they are severe, through the remaining steps. 20 C.F.R. § 404.1523 (2003); Dixon, 54 F.3d at 1031.

Here, the ALJ found that the presence of degenerative joint disease of the left knee and osteoarthritis of the spine were severe impairments but that the symptoms of Weaver's hypertension and obesity were not of such intensity, frequency, and duration as to affect more than minimally the ability to do basic work activities and were not severe. T. 16. SSR 02-1p states that "as with any other medical condition, . . . obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  The presence of an impairment without evidence that it caused functional limitations that precluded the claimant from engaging in substantial gainful activity is insufficient.  Rivera v. Harris, 623 F.2d 212, 215-16 (2d Cir. 1980); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995).

Here, Weaver was diagnosed with obesity by several different sources.  T. 136, 141. Weaver reported that he was seventy inches tall and weighed 335 pounds. T. 62. On September 26, 1996, Weaver was seventy-one inches tall and weighed 350 pounds. T.

12

129. In addition, Weaver suffered from degenerative joint disease of the left knee and osteoarthritis of the spine which the ALJ found were severe impairments.

There is also objective evidence to support a finding that Weaver's obesity impacted his physical limitation in his knee and his spine which caused restrictions in the ability to engage in work-related activities. X-rays showed moderately advanced osteoarthritis, medial joint space narrowing, spurs in the patellofemoral joint, degenerative changes in the lateral joint line, and half the joint space remained in the medial joint line. T. 102-03,107, 115, 140. X-rays of the lumbrosacral spine showed a slight straightening of the lumbar curvature, moderate degenerative disc disease at L2-L3, mild degenerative disc disease at L3-L4, severe degenerative disc disease at L4-L5, and posterior facet arthritis of moderate degree at L4-L5 and L5-S1. T. 139.

The opinions of other medical sources support a finding that Weaver's obesity was a severe impairment. Carteaux found that Weaver had degenerative joint disease and was not employable. T. 123. Dr. Mina diagnosed Weaver with osteoarthritis and a torn medial meniscus. T. 102. Dr. Shuman found that Weaver had degenerative disease of the left knee. T. 103. Weaver was not a candidate for surgery due to his obesity. T. 123. Examining sources recommended weight loss for treatment. 103. Therefore, the ALJ failed properly to evaluate Weaver's obesity as a severe impairment.

### D.  Treating Source

Weaver contends that the ALJ failed to accord proper weight to the opinions of Dr. Harvey and P.A. Carteaux, both of whom were treating sources. The Commissioner contends that the ALJ properly weighed the medical evidence.

13

When evaluating an application seeking disability benefits, the hearing officer must look at: "(1) the objective medical facts and clinical findings, (2) the treating physician's diagnos[is] . . . , (3) subjective evidence of disability and pain related by claimant and . . . evidence of these conditions, if any, and (4) the claimant's educational background, age, and work record."  See Harris v. Railroad Retirement Bd., 948 F.2d 123, 126 (2d Cir. 1991) (citing Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).  Mayo contends that the ALJ failed to give adequate consideration to her treating sources' determinations of disability.  Under the regulations, a treating source's opinion is entitled to "controlling weight" if the Commissioner "find[s] that [it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); Shaw, 221 F.3d at 134.  Before discounting the opinion of a treating source, however, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to: assess the following factors in determining how much weight to afford that opinion: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors.  Alder v. Apfel, No. 99-CV-136, 1999 WL 1458368, at *4 n.3 (N.D.N.Y. Aug. 13, 1999) (Mordue, J.) (citing Schaal, 134 F.3d at 504).

Carteaux, a physician's assistant, treated Weaver from August 1995 until the present. T. 105-108, 122-28, 160-64, 236-240. Carteaux found that Weaver had degenerative joint disease, osteoarthritis of the left knee, stable hypertension, that Weaver could occasionally lift and carry twenty pounds, could stand and walk less than two hours per

day, had no limitation to sitting, was unable to use foot controls, and in July 1996, that Weaver was not employable. T. 105-08, 122-123.   Dr. Harvey examined Weaver twice and found that Weaver was unable to sit, stand, or walk for more than thirty minutes, and that there was a moderate partial disability that was possibly permanent. T. 133 T. 136.

Both these opinions are supported by objective evidence in the record.  X-rays showed moderately advanced osteoarthritis involving the medial joint compartment, medial joint space narrowing, spurs in the patellofemoral joint, slight degenerative changes in the lateral joint line, and half the joint space remained in the medial joint line. T. 107, 115, 140. X-rays of the lumbrosacral spine taken in September 1996 showed a slight straightening of the lumbar curvature, moderate degenerative disc disease at L2-L3,  mild degenerative disc disease at L3-L4, severe degenerative disc disease at L4-L5, and posterior facet arthritis of moderate degree at L4-L5 and L5-S1. T. 139.

The only support for the ALJ's finding are that of non-examining physicians who found that Weaver was capable of light work. T. 68-75, 84-91. The ALJ failed to assign any weight to the opinions of Dr. Harvey and P.A. Carteaux and also failed to cite substantial medical evidence to counter their opinions. Therefore, there is not substantial evidence in the record to support the ALJ's finding as to the opinions of these two treating sources.

### E. RFC

Weaver contends that the ALJ failed properly to calculate his RFC.  The Commissioner contends that the ALJ properly evaluated Weaver's RFC.

RFC describes what a claimant is capable of doing despite his or her impairments.

15

20 C.F.R. § 404.1545(a) (2002).  "RFC is determined by considering all relevant evidence consisting of, inter alia, [the claimant's] physical abilities, symptoms including pain . . . [or other] limitations which go beyond symptoms."  Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (Hurd, J.) (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (1990)).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding claimant's capabilities.  Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work or other work in the national economy.  State of N.Y. v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see generally 20 C.F.R. §§ 404.1520 (2002), 416.960 (2002).

Here, the ALJ found that Weaver could perform a full range of light and sedentary work. T. 18. Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).  Sedentary work requires a claimant be capable of "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a), Kamerling v. Massanari, 295

16

F.3d 206, 208, n.2 (2d Cir. 2002).

Here, two reviewing physicians found that Weaver was capable of light work. 68-75, 84-91. However, these findings are not consistent with the opinions of treating and examining sources and the objective medical evidence. Dr. Harvey found that Weaver was unable to sit, stand, or walk for more than thirty minutes. T. 133. X-rays of the left knee showed a moderate degree of osteoarthritis involving the medial compartment, mild osteoarthiritic changes, and no joint effusion. T. 140.  Carteaux found that Weaver was not employable. T. 123.

X-rays showed moderately advanced osteoarthritis involving the medial joint compartment, medial joint space narrowing, spurs in the patellofemoral joint, slight degenerative changes in the lateral joint line, and half the joint space remained in the medial joint line. T. 107, 115, 140. X-rays of the lumbrosacral spine taken in September 1996 showed a slight straightening of the lumbar curvature, moderate degenerative disk disease at L2-L3,  mild degenerative disk disease at L3-L4, and severe degenerative disc disease at L4-L5, and posterior facet arthritis of moderate degree at L4-L5 and L5-S1. T. 139.  X-rays of the lumbrosacral spine showed a slight straightening of the lumbar curvature, no scoliosis, a moderate degree of degenerative disc disease at L2-L3, mild degenerative disc disease at L3-L4, severe degenerative disc disease and posterior facet arthritis of moderate degree at L4-L5. T. 139.   The other examining physicians of record, Drs. Mina and Shuman,  did not make findings as to Weaver's exertional limitations. Therefore, there is not substantial evidence in the record to support the ALJ's finding that Weaver was capable of sedentary work.

**F. Grids**

Weaver contends that the ALJ erred in his application of the Grids.  The
Commissioner contends that the ALJ properly applied the Grids.

Where, as here, a claimant demonstrates that he or she has an impairment that
prevents a return to past relevant work, see 20 C.F.R. § 404.1560(c) (1992), the burden
shifts to the Commissioner to prove that a job exists in the national economy which the
claimant is capable of performing.  Curry, 209 F.3d at 122.  In evaluating disability, the
severity of the impairments, RFC, past work, age, education, and work experience are
considered. 20 C.F.R. § 404.1520.  The ALJ may apply the Grids or consult a vocational
expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan,  168 F.3d
72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2005). If the claimant's
characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to
whether he or she is disabled. Pratts v Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

Here, the ALJ applied Rule 202.18 and 202.17 which pertained to an RFC of light
work, and vocational factors of a younger individual which directed a finding that Weaver
was not disabled. A younger person is under age 50 and a person closely approaching
advanced age is age fifty to fifty-four. 20 C.F.R. § 404.1563 (c), (d). Weaver contends that
because he is now fifty-two, the Grids direct a conclusion that he is not disabled. The
Commissioner contends that the applicable age is Weaver's age at the time of the ALJ's
decision not his present age. Weaver was born on October 15, 1953 and at the time of the
ALJ's decision was forty-four years old, considered a younger person.

The Commissioner uses the age category that applies during the period disability is
alleged.  20 C.F.R. § 404.1563. However, if a claimant is within a few days to a few

months of reaching an older age category and using the older age category would result in a determination of disability, the Commissioner should consider whether to use the older age category after evaluating the overall impact of all other factors. 20 C.F.R. § 404.1563.

Here, during the period of disability alleged, between Weaver's March 1996 application and the Appeals Council's decision in August 1999, Weaver was forty-six and forty nine respectively. While he is currently fifty-two, at the time disability was alleged he was a younger person and was not in the borderline age category. Therefore, the ALJ did not err in applying the grid for a younger person.


### G. Credibility

Weaver contends that the ALJ failed properly to assess his credibility. The Commissioner contends that the ALJ properly evaluated Weaver's credibility.

Subjective complaints of pain may serve as the basis for establishing disability, even where the pain is unsupported by clinical or medical findings, as long as an underlying impairment can be 'medically ascertained.'" Knapp v. Apfel, 11 F. Supp. 2d 235, 237 (N.D.N.Y. 1998) (McAvoy, C.J.) (citations omitted); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). An ALJ has an obligation throughout the disability evaluation process to consider complaints of pain. Martone v. Apfel, 70 F. Supp. 2d at 150. When rejecting claims of disabling pain, the ALJ must do so with sufficient specificity to enable the courts to make an independent evaluation of that decision. Id. It is important to remember, however, that pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).

A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain, see 20 C.F.R. §§ 404.1529(a)-(b) (2005), 416.929(a)-(b) (2005), but does not require objective evidence of the pain itself or its degree.  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Chandler v. Callahan, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (Pooler, J.); see also 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  The pain must be properly evaluated, considering the applicant's credibility and motivation as well as the medical evidence of impairment eventually to reach an independent judgment concerning the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus, 615 F.2d at 27.  In evaluating a claimant's complaints of pain, an ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which essentially codify Social Security Ruling 88-13:

(i)  [The claimant's] daily activities;

(ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ found that given Weaver's extensive activities, inconsistent recitation of his admitted ability to engage in physical activities, minimal clinical findings, reliance on over-the-counter nostrums for symptomatic relief, failure to follow a recommendation that the obtain follow-up treatment, and the medical opinions in the record, Weaver's allegations of totally disabling symptoms were not credible to the extent alleged. T. 17. Weaver testified that he walked a mile or two every other day. T. 321. Weaver testified that it bothered him to sit, that he could sit 30-45 minutes, and could stand a half-hour to an hour. T. 322. Weaver testified that he was able to cook, wash dishes, houseclean, grocery shop, do laundry, vacuum, do outdoor work such as cut the grass, and shovel snow.  T. 322-24. Weaver testified that he hunted this past deer season. T. 324. Testimony regarding daily activities does not necessarily preclude a finding of disability and is a factor to be considered in the evaluation. Here, there were objective medical findings and opinions of treating sources that support Weaver's subjective symptoms but which were not adequately considered by the ALJ.

While the ALJ stated that there were minimal findings, x-rays showed the existence of an impairment that could reasonably produce pain. X-rays showed moderately advanced osteoarthritis involving the medial joint compartment, medial joint space narrowing, spurs in the patellofemoral joint, slight degenerative changes in the lateral joint line, and half the joint space remained in the medial joint line. T. 107, 115, 140. X-rays of the lumbrosacral spine taken in September 1996 showed a slight straightening of the lumbar curvature, moderate degenerative disc disease at L2-L3,  mild degenerative disc disease at L3-L4, severe degenerative disc disease at L4-L5, and posterior facet arthritis of moderate degree at L4-L5 and L5-S1. T. 139.  Carteaux found that Weaver could occasionally lift

21

and carry twenty pounds, could stand and walk less than two hours per day, had no limitation to sitting, was unable to use foot controls, and that Weaver was not employable. T. 108, 123.  Dr. Harvey found that Weaver was unable to sit, stand, or unable to walk for more than thirty minutes. T. 133.

There are objective medical findings that support the symptoms alleged by Weaver, regardless of his daily activities.

### H.  Reversal or Remand

A reviewing court has the authority to reverse with or without remand.  42 U.S.C. §§ 405(g), 1383(c)(3) (1999).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).  Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. Id.; see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Here,  the evidence that Weaver's impairment met the listing was overwhelming and there are no gaps in the record regarding this issue and its presumptive effect.  Accordingly, it is recommended that the decision of the Commissioner be reversed rather than remanded for further proceedings and that Weaver's claim be granted.

### IV. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REVERSED** and

22

Weaver's claim be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATE: December 15, 2005
      Albany, New York

United States Magistrate Judge

23